SANDY MARIE SHAW, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 18229

April 29, 1988                                         753 P.2d 888

*Ralph J. Rohay,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, *Daniel M. Seaton,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

*Per Curiam:*

This is an appeal by Sandy Marie Shaw who was convicted of one count of first degree murder with the use of a deadly weapon. Shaw received two consecutive life sentences without the possibility of parole.

During closing argument at trial, the state discussed the felony-murder rule and its potential application to the death of James Cotton Kelly. In addition, the jury was read instruction number eleven which stated in part: "Murder of the First Degree is Murder which is (a) perpetrated by means of any kind of wilful,

deliberate and premeditated killing or (b) committed in the perpetration or attempted perpetration of robbery." Shaw contends that it was possible that she was convicted of first degree felony-murder without being charged with the underlying felony. Since she was not charged with the robbery, nor certified as an adult to stand trial for that felony, Shaw insists that she was denied a fair trial, and thus her conviction must be overturned. We disagree.

## Juvenile Certification

At trial, the state primarily proceeded under the theory that Shaw was guilty of premeditated first degree murder. A review of the record clearly indicates the presence of substantial evidence in support of a first degree murder conviction under a premeditation theory. Nevertheless, we will address Shaw's suggestion of error concerning application of the felony-murder rule.

Shaw was charged and convicted of the crime of murder. First degree murder is defined, in part, as a killing "[c]ommitted in the perpetration or attempted perpetration of . . . [a] robbery." NRS 200.030(1). In proving first degree murder using the felony-murder rule, the state need not charge the underlying felony. We have in the past stressed that:

> The law is well settled in this State that a felony and a homicide committed together constitute the crime of murder and may be charged as such and in the same manner as the other murders are charged, and it is not necessary to allege that it was committed in perpetrating another felony.

Rogers v. State, 83 Nev. 376, 378, 432 P.2d 331, 332 (1967). It is clear, therefore, that the prosecution's use of the felony-murder rule at Shaw's murder trial does not mandate an additional charge of the underlying felony.

At both the time the murder was committed and at the time of trial, Shaw had not attained sixteen years of age. Under the laws governing juveniles, Nevada Revised Statute Chapter 62, a child under the age of sixteen may not be certified by the juvenile court to stand trial as an adult. NRS 62.080. The juvenile court, however, may retain for trial only those minors who have committed an act which falls within the jurisdiction of the juvenile court. According to the juvenile laws, the juvenile courts hold exclusive original jurisdiction over proceedings concerning a child who has committed a delinquent act. NRS 62.040(1). The term "delinquent act" is specifically defined to exclude the crimes of murder and attempted murder. NRS 62.040(1). As a

result, it was not necessary to certify Shaw as an adult before she could stand trial for the murder of James Cotton Kelly. Furthermore, since the crime of robbery was not, and need not have been charged, it was not necessary to certify Shaw as an adult in conjunction with such crime. Consequently, the district court's failure to certify Shaw as an adult in connection with the robbery of James Cotton Kelly did not deny Shaw a fair trial.

## Bargained-for Testimony

Shaw maintains that the testimony of Thomas Varela was tainted by an alleged deal with the prosecution. Because it is elemental that prosecutors must disclose agreements made with material witnesses, People v. Phillips, 711 P.2d 423 (Cal. 1985), and since no agreement was revealed at trial, Shaw insists that Thomas Varela's testimony was tainted to a degree sufficient to justify reversal of her conviction. Once again we must disagree.

On direct examination, Thomas Varela explained that he had inquired into whether a deal could be reached for information regarding Shaw's case. Thomas Varela further testified that the state indicated no plea bargain deal would be offered. Moreover, he denied that he had struck any such deal with the prosecution.

The only support for Shaw's attack is the inference of a possible deal derived from the fact that Thomas Varela's probation was lifted and his bail dropped prior to trial. In light of the trial testimony, this inference, standing alone, is hardly sufficient to establish the alleged prosecutorial impropriety. In addition, Thomas Varela's testimony was substantially duplicated by the testimony of his brother, Jerry Varela. Since there is no challenge to Jerry Varela's testimony, and since such testimony is similar to that offered by Thomas Varela, any error arising from the admission of Thomas Varela's testimony would be harmless.

## Double Hearsay

Shaw challenges the admissibility of Christopher Couzens's testimony. Couzens testified to the substance of a conversation he overheard between two participants in the murder, Troy Kell and Billy Merritt. According to Couzens, with both Kell and him in the room, Merritt telephoned Shaw. During the phone call, Merritt relayed Shaw's statements to Kell. Shaw contends that Couzens's entire testimony was inadmissible hearsay which extremely prejudiced her case, and thereby warrants reversal of her conviction.

Couzens's testimony, although partly hearsay and partly double hearsay, was properly admitted. Hearsay within hearsay is

admissible where each hearsay statement falls within the confines of a hearsay exception. NRS 51.067. Couzens's testimony concerning Shaw's statements over the telephone were properly admitted since they were statements of a party offered against that party. NRS 51.035(3)(a). Couzens's testimony pertaining to Merritt's recitation of Shaw's over-the-phone statements were likewise properly admitted by the district court pursuant to the co-conspirator exception to the hearsay ban. NRS 51.035(3)(e). Thus, the district court acted appropriately in admitting Couzens's testimony.

## Inculpatory Statements

Shaw argues that because she was a minor at the time of her arrest she was entitled to the protections set forth in Nevada's juvenile statutes—Nevada Revised Statutes Chapter 62. Since one of those protections, the required immediate notification of one of Shaw's parents at the time she was taken into custody, was not provided, Shaw submits that her statements of October 4, 1986, October 5, 1986, and October 8, 1986, should have been suppressed at trial.

As previously stated, individuals charged with murder are specifically excepted from the jurisdiction of the juvenile courts and therefore do not come within the purview of the attendant juvenile laws. NRS 62.040. Shaw was not entitled to any of the protections set forth in NRS Chapter 62, and accordingly, we find no error by the district court.

## Prior Admissions

Shaw contends that the prosecution improperly questioned Shaw's credibility at trial in light of the state's use of Shaw's admissions. It is Shaw's position that the district court erred by permitting the prosecution to offer testimony of various witnesses recounting statements made to them by Shaw while permitting the state to attack the credibility of Shaw's testimony concerning those same events.

Although hearsay, the testimony of those witnesses who recounted Shaw's out-of-court statements were properly admitted into evidence pursuant to NRS 51.035(3)(a). In addition, since such admissions were inconsistent with Shaw's position at trial, they were relevant and admissible. Turner v. State, 98 Nev. 103, 641 P.2d 1062 (1982). In light of the inconsistency between the properly admissible extra-judicial statements made by Shaw to various witnesses and her in-court testimony, it was proper for

the prosecution to attack Shaw's credibility. As such, we find no error.

### Prosecutorial Misconduct

Shaw suggests that the prosecution's lopsided portrayal of the case to the media, without mention of any mitigating facts adduced at trial, amounts to prosecutorial misconduct. Suffice it to say, that for prosecutorial misconduct to occur, the jury, not the public in general, must be prejudiced by the state's conduct. *See* Yates v. State, 103 Nev. 200, 734 P.2d 1252 (1987); Aesoph v. State, 102 Nev. 316, 721 P.2d 379 (1986); Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985); McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984); Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977). The challenged statements do not represent prosecutorial misconduct.

### Conclusion

Having reviewed the record on appeal, and for the reasons set forth above, we conclude that Shaw cannot demonstrate error in this appeal. Accordingly, we affirm the judgment of the district court.