OPINION
 

 Per Curiam:
 

 In this appeal, appellant contends that the state elicited his confession and seized a controlled substance in violation of his
 
 *1123
 
 Fourth Amendment rights. We agree and therefore reverse the judgment of conviction.
 

 FACTS
 

 On the morning of December 16, 1991, Deputy Brian Bate of the Elko County Sheriff’s Department learned from a fellow deputy that a person named Dewey Wilder possessed a stolen vehicle. Wilder, who was also suspected of dealing in narcotics, had borrowed the car from his parents in Idaho on the condition that he return it the same day. His parents reported the vehicle as stolen when Wilder failed to return it. The vehicle was parked at the Horseshu Motel in Jackpot.
 

 As Deputy Bate observed the allegedly stolen vehicle, appellant James Lee Arterburn approached within ten feet of it. Arterburn then went to the motel’s registration desk, where, according to the motel receptionist, he called Wilder’s room. After calling Wilder’s room, Arterburn left the motel and walked to the Horseshu Club, where he waited for approximately fifteen minutes. Arterburn then walked back to and entered Wilder’s room at the Horseshu Motel, where he remained for another fifteen minutes. Upon leaving Wilder’s room, Arterburn walked to the nearby Chevron parking lot, where he got into a pickup truck and drove away.
 

 Deputy Bate followed the truck in his patrol car and subsequently initiated a traffic stop by activating the patrol car’s overhead lights. When he approached Arterburn’s truck, Deputy Bate had his hand on his gun. According to Deputy Bate, Arterburn was not free to leave at this time and was considered under detainment until released. After asking Arterburn’s name, Deputy Bate asked Arterburn if he had met Wilder at the motel. Arterburn answered “yes,” and Deputy Bate then asked Arterburn if he knew anything about the car that Wilder was driving. Arterburn allegedly stated that he was with Wilder when Wilder’s mother gave Wilder the keys to the car. Deputy Bate then asked Arterburn if he “would allow [Deputy Bate] to take him to the sheriff’s department, or if he would come with [Deputy Bate] to the sheriff’s department to do an interview.” According to Deputy Bate, Arterburn agreed to the interview, and Deputy Bate asked him if he wanted to drive his own vehicle or ride in the patrol car. Arterburn purportedly responded that he would ride in the patrol car.
 

 At the station, Deputy Bate allegedly informed Arterburn that he was not under arrest. Although at one point during pretrial proceedings, Deputy Bate testified that he had told Arterburn (at the station) that he was free to leave at any time, Deputy Bate later testified that “[a]t no point in time did I ever tell him that he
 
 *1124
 
 was free to leave, no. I told him that he had — that this was a voluntarily [sic] thing and that he was not under arrest. I don’t recall ever telling him, Mr. Arterburn, that he was free to leave in those exact words, no.” Deputy Bate also gave Arterburn
 
 Miranda
 
 warnings at the station; Arterburn then agreed to the questioning and signed a written waiver of rights form.
 

 Deputy Bate first asked Arterburn why Wilder was in the area, and Arterburn explained that he had only gotten a ride with Wilder from Idaho to Jackpot so that Arterburn could visit a woman friend. Deputy Bate then asked Arterburn if he was involved in taking the vehicle, and Arterburn answered “no.” According to Deputy Bate, Arterburn’s association with Wilder, and Wilder’s alleged involvement in narcotics, led Bate to suspect that Arterburn might possess controlled substances. When Deputy Bate asked Arterburn if he possessed controlled substances, Arterburn responded that he did. After Deputy Bate asked Arterburn if he could search for the drugs, Arterburn told him that they were in his jacket pocket. Deputy Bate asked Arterburn if he could take them from the jacket pocket, and Arterburn said that he could. Deputy Bate then retrieved a plastic baggie containing 1.7 grams of marijuana (enough for a small cigarette) and some rolling papers.
 

 Arterburn was subsequently charged with possession of a controlled substance. Prior to trial, he filed a motion to suppress evidence of the marijuana, in which he asserted that Deputy Bate had violated his Fourth Amendment rights by pulling him over, taking him to the station, and then retrieving the marijuana from him. The district court denied this motion and concluded that Deputy Bate had “testified to some articulable facts that would allow him to stop and question Mr. Arterburn concerning the car, the possible stolen vehicle.” In addition, the district court determined that Arterburn “voluntarily went to the substation and gave his statement, and that he did consent to the deputy reaching in, told the deputy the items were in his pocket, and that [Deputy Bate] could reach in and get the item of narcotics.”
 

 On March 12, 1992, the jury found Arterburn guilty of possession of a controlled substance. On April 29, 1992, the district court entered a judgment of conviction and sentenced Arterburn to three years in the Nevada State Prison. This sentence was suspended, and Arterburn was placed on a maximum of two years’ probation.
 
 [1]
 

 
 *1125
 

 DISCUSSION
 

 Courts have acknowledged that three categories of police interactions exist: (1) the “consensual encounter,” which is completely voluntary and for which a police officer needs no justification; (2) the “detention,” which is a seizure strictly limited in length, scope and purpose, and for which a police officer must have an articulable suspicion that the civilian has committed or will commit a crime; and (3) the “arrest,” for which a police officer must have probable cause. U.S. v. Hooper, 935 F.2d 484, 490 (2d Cir.),
 
 cert. denied,
 
 112 S. Ct. 663 (1991); People v. Brueckner, 273 Cal. Rptr. 292 (Ct. App. 1990).
 

 Here, Deputy Bate pulled Arterburn over for questioning and therefore seized him under the Fourth Amendment: “It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person.” Terry v. Ohio, 392 U.S. 1, 16 (1968). Deputy Bate admitted that after he stopped Arterburn, Arterburn was not free to leave. In addition, Deputy Bate admitted that he placed his hand on his gun when approaching Arterburn.
 

 During the time that Arterburn was subject to this seizure, and was clearly not free to leave, Deputy Bate asked him if he would go to the station. Although Arterburn did agree to go to the station, we conclude that under the circumstances, Arterburn had no real choice, and his consent was not voluntary. In particular, Arterburn’s detention did not terminate before he was asked to go to the station — Deputy Bate did not inform him that he was free to leave. Therefore, Arterburn reasonably submitted to Deputy Bate’s authority, and his decision to go to the station cannot be deemed voluntary.
 
 See
 
 People v. Sanchez, 240 Cal. Rptr. 413, 416-17 (Ct. App. 1987).
 

 At some point between the traffic stop and further questioning at the station, Arterburn’s detention exceeded the length, scope and purpose of the traffic stop and became an arrest for which probable cause was required.
 
 See
 
 U.S. v. Mondello, 927 F.2d 1463, 1471 (9th Cir. 1991) (“Whether an investigatory stop has become a full fledged arrest, requiring probable cause, depends in part on the duration of the detention. ‘[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.’”) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)); U.S. v. Del Vizo, 918 F.2d 821, 824 (9th Cir. 1990) (in determining whether detention has ripened into arrest, “[t]here has been an arrest if, under the circumstances, a reasonable person would conclude that he was
 
 *1126
 
 not, free to leave after brief questioning”) (citations omitted). Deputy Bate did not have probable cause to arrest Arterburn for car theft or for possession of a controlled substance. Arterburn was therefore illegally arrested in violation of the Fourth Amendment.
 

 Finally, we conclude that Arterburn’s confession was not “sufficiently an act of free will to purge the primary taint of the unlawful invasion.” Wong Sun v. United States, 371 U.S. 471, 486 (1963). The United States Supreme Court has explained that a “causal connection” test is used in analyzing custodial interrogations under the Fourth Amendment.
 
 Miranda
 
 warnings, which may be sufficient under the Fifth Amendment’s “voluntariness” test, do not necessarily break the causal connection between an illegal arrest and an inculpatory statement:
 

 The
 
 Miranda
 
 warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant.
 

 Brown v. Illinois, 422 U.S. 590, 603-04 (1975) (citations and footnotes omitted);
 
 accord
 
 Dunaway v. N.Y., 442 U.S. 200, 217 (1979) (noting that a confession made after
 
 Miranda
 
 warnings may be deemed “voluntary” under the Fifth Amendment but that voluntariness is only the beginning of the pertinent Fourth Amendment analysis);
 
 cf.
 
 New York v. Harris, 495 U.S. 14 (1990) (holding that where police have probable cause to arrest suspect and perform warrantless in-home arrest, suspect’s subsequent out-of-home statement not precluded by exclusionary rule).
 

 Thus, under
 
 Brown,
 
 in order to determine whether a confession obtained during a Fourth Amendment violation is admissible, the following factors, in addition to voluntariness, must be assessed: (1) “the temporal proximity of the arrest and the confession,” (2) “the presence of intervening circumstances,” and (3) “the purpose and flagrancy of the official misconduct.” The government has the burden of showing “a sufficient break in events to undermine the inference that the confession was caused by the Fourth Amendment violation.” Oregon v. Elstad, 470 U.S. 298, 306 (1984).
 

 In the present case, Arterburn’s detention constituted an illegal arrest without probable cause. Although Arterburn received
 
 Miranda
 
 warnings, the connection between the “arrest” and his confession (to a different crime) was temporally proximate and was not interrupted by intervening circumstances. Specifically,
 
 *1127
 
 Arterburn was questioned soon after he arrived at the station, and he did not “freely volunteer” the fact that he possessed a small quantity of marijuana. Thus, no “sufficient break in events” occurred which disrupted the causal connection between Arterburn’s illegal arrest and his confession. Additionally, although Deputy Bate’s misconduct may not have been “flagrant,” he did ask Arterburn questions that had no relation to the alleged car theft. Under
 
 Brown
 
 and
 
 Dunaway,
 
 Arterburn’s confession, along with the seized marijuana, should have been suppressed under the Fourth Amendment. Accordingly, we reverse the judgment of conviction.
 
 [2]
 

 [1]
 

 Presumably, Arterburn has completed his sentence. Even so, this appeal is not moot as Arterburn’s status as a convicted felon affects or could affect, among other things, his civil rights and jury service, his eligibility to carry a firearm, his ability to obtain professional licenses and certain jobs, any sworn testimony, and any sentence he may receive in the future.
 

 [2]
 

 In light of our conclusion that Arterburn’s Fourth Amendment rights were violated, it is not necessary to address his remaining contentions.