KITRICH POWELL, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 22348

January 3, 1997 930 P.2d 1123

[Rehearing denied May 22, 1997]

*Michael Pescetta*, Las Vegas; *Steven G. McGuire*, State Public Defender and *Timothy P. O'Toole*, Deputy State Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Stewart L. Bell*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, and *Daniel M. Seaton*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SHEARING, J.:

This case comes to us on remand from the United States Supreme Court. The United States Supreme Court determined that this court erred in failing to apply County of Riverside v. McLaughlin, 500 U.S. 44 (1991), retroactively to the case of Kitrich Powell. The case was remanded to this court for a determination of the appropriate remedy for the delay in determining probable cause and for a determination as to whether harmless error analysis applies.[1]

Police arrested Powell without a warrant on Friday, November 3, 1989, for felony child abuse of his girlfriend's four-year-old daughter. Earlier that day, Powell had made several admissions to the police. On November 7, 1989, while still in custody, Powell made several more admissions to the police. In an *ex parte* hearing later that day, a magistrate found for the first time that probable cause existed to arrest Powell.

---

[1]Powell v. Nevada, 114 S. Ct. 1280 (1994).

On November 8, 1989, Powell was charged with child abuse causing substantial bodily harm in violation of NRS 200.508. After the child died, Powell was charged with murder. At trial, prosecutors presented evidence of Powell's statements both before his arrest and on the day of his probable cause hearing. A jury subsequently found Powell guilty of first degree murder and sentenced him to death.

On direct appeal Powell claimed, among other things, that he was not brought before a magistrate within seventy-two hours after his arrest as required by NRS 171.178(3).[2] We held that Powell had waived his right to a timely arraignment. Powell v. State, 108 Nev. 700, 706, 838 P.2d 921, 925 (1992). However, in the course of our opinion, we noted that in *McLaughlin,* 500 U.S. at 56, the United States Supreme Court held that a judicial probable cause determination must generally be made within forty-eight hours of a warrantless arrest. *Powell,* 108 Nev. at 705, 838 P.2d at 924. Relying on *McLaughlin,* this court held that NRS 171.178(3) violated the Fourth Amendment of the United States Constitution to the extent that it permitted an initial appearance for a probable cause determination up to seventy-two hours after an arrest and excluded nonjudicial days from the calculation of the seventy-two hours.[3] *Id.;* 838 P.2d at 924.

However, in this court's opinion affirming Powell's conviction, we noted that the forty-eight hour rule announced in *McLaughlin*

---

[2]NRS 171.178(3) provides, in pertinent part:

> 3.  If an arrested person is not brought before a magistrate within 72 hours after arrest, excluding nonjudicial days, the magistrate:
> (a) Shall give the prosecuting attorney an opportunity to explain the circumstances leading to the delay; and
> (b) May release the arrested person if he determines that the person was not brought before a magistrate without unnecessary delay.

[3]In Powell v. State, 108 Nev. 700, 838 P.2d 921 (1992), the court specifically held:

> The *McLaughlin* case renders NRS 171.178(3) unconstitutional insofar that it permits an initial appearance up to seventy-two hours after arrest and instructs that non-judicial days be excluded from the calculation of those hours. Based on *McLaughlin,* we hold that a suspect must come before a magistrate within forty-eight hours, including non-judicial days, for a probable cause determination.

*Id.* at 705, 838 P.2d at 924. That holding is misleading and should be revised to read:

> The *McLaughlin* case renders NRS 171.178(3) unconstitutional insofar as it permits a *probable cause determination* up to seventy-two hours after arrest and instructs that non-judicial days be excluded from the calculation of those hours. Based on *McLaughlin,* we hold that a suspect must receive a *probable cause determination* within forty-eight hours, either *ex parte or* before the magistrate, within forty-eight hours, including non-judicial days.

did not apply retroactively to Powell's case. *Id.* at 705 n.1; 838 P.2d at 924 n.1. The United States Supreme Court disagreed on the ground that the rule was applicable to all convictions which had not become final when *McLaughlin* was announced. Powell v. Nevada, 511 U.S. 79 (1994). The United States Supreme Court remanded this case to this court for our determination of the appropriate remedy for the delay in determining probable cause and for consideration of the argument that the error was harmless.[4] *Id.*

The United States Supreme Court first recognized the right to a prompt judicial determination of probable cause in Gerstein v. Pugh, 420 U.S. 103 (1975). *Gerstein* resolved two important issues. First, although it required police officers to prove probable cause for arrests, the Court did not require an adversarial hearing. *Id.* at 120. Second, the Court stated that a state's failure to conduct a probable cause hearing is not sufficient in itself to void a subsequent conviction. *Id.* at 119.

*Gerstein* left two important questions unanswered: (1) the timing necessary for a "prompt" judicial determination, and (2) the proper remedy for a violation of the Fourth Amendment right to a prompt probable cause hearing. The United States Supreme Court resolved the first question in *McLaughlin* when it held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *McLaughlin,* 500 U.S. at 56.

This court must now determine whether the exclusion of evidence obtained during an unlawful detention is the proper remedy for an unconstitutional denial of the right to a probable cause hearing within forty-eight hours of arrest, i.e., a *Gerstein/McLaughlin* violation.

In Weeks v. United States, 232 U.S. 383, 398 (1914), the United States Supreme Court first reasoned that evidence obtained in violation of the Fourth Amendment must be excluded in the federal courts. The Court later increased the breadth of the exclusionary rule by holding that the rule applied to the states as well as to the federal government. Mapp v. Ohio, 367 U.S. 643, 655 (1961). The *Mapp* Court reasoned that the Fourth Amendment right carries with it a "most important constitutional privilege, namely, the exclusion of the evidence which an accused had

---

[4]The United States Supreme Court also raised the issue of the consequences of Powell's failure to raise the federal question, but this court has the authority to address any constitutional law issue *sua sponte;* consequently, Powell's failure to raise the federal issue does not bar this court from considering it. *See* McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983).

been forced to give by reason of the unlawful seizure. To hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment." *Id.* at 656.

Recently, the United States Supreme Court has limited the exclusionary rule, apparently abandoning the position that effectuation of the Fourth Amendment requires unwavering application of the exclusionary rule. The Court has concluded that the exclusionary rule may not apply in certain forums, including grand jury hearings,[5] actions to recover a tax delinquency,[6] and deportation hearings.[7] Significantly, the Court has also determined that a court is not compelled to exclude evidence obtained in violation of the Fourth Amendment if a police officer relied in good faith on a warrant. United States v. Leon, 468 U.S. 897 (1984). In *Leon,* the Court held that a police officer's good faith reliance on a magistrate's warrant can sufficiently support the purposes of the Fourth Amendment even when the magistrate's probable cause determination is erroneous. *Id.* at 925-26.

In its decision last year in Arizona v. Evans, 514 U.S. 1, 13-14, 115 S. Ct. 1185, 1192-93 (1995), the United States Supreme Court reiterated its position that the issue of exclusion is separate from the question of whether the Fourth Amendment has been violated, and that exclusion is only appropriate where the remedial objectives of the exclusionary rule are served. In *Evans,* a clerical employee mistakenly failed to delete an arrest warrant from a computer, and a police officer arrested the defendant, pursuant to the warrant, in good faith. *Id.* at 15, 115 S. Ct. at 1193. The Court concluded that the clerical employee would not be deterred by application of the exclusionary rule, and reversed the Arizona Supreme Court determination that invocation of the exclusionary rule was appropriate where negligent record-keeping resulted in an unlawful arrest. *Id.* at 15.

Under *Evans,* it appears that the failure to make a prompt probable cause determination could also be regarded as yet another instance where the exclusionary rule does not necessarily apply, since the failure to make such a determination does not directly implicate police conduct. In the instant case, Powell

---

[5]United States v. Calandra, 414 U.S. 338 (1974).

[6]United States v. Janis, 428 U.S. 433 (1976).

[7]Immigration and Naturalization Service v. Lopez-Mendoza, 468 U.S. 1032 (1984).

confessed during a period of detention later ruled to be unlawful on the basis that no probable cause determination had been made within forty-eight hours. We conclude that the United States Constitution does not require the *per se* exclusion of a confession due to unlawful detention.

It remains to be determined whether the circumstances of this case warrant exclusion. In State v. Boudreau, 67 Nev. 36, 214 P.2d 135 (1950), this court held:

> [T]he voluntary character of a confession is the chief test of its admissibility. . . . [T]his rule should be adhered to in cases where, as in the instant case, the confession is made while the defendant is under arrest and prior to his presentation before a magistrate, *and though the detention shall have become unlawful.*

*Id.* at 49, 214 P.2d at 141 (emphasis added). Thus, the voluntariness of the confession determines its admissibility even though it may have taken place during a period of unlawful confinement. "To determine the voluntariness of a confession, the court must consider the effect of the totality of the circumstances on the will of the defendant. The question in each case is whether the defendant's will was overborne when he confessed." Passama v. State, 103 Nev. 212, 214, 735 P.2d 321,323 (1987) (citations omitted).

However, voluntariness alone is not sufficient:

> [I]n order to determine whether a confession obtained during a Fourth Amendment violation is admissible, the following factors, *in addition to voluntariness,* must be assessed: (1) "the temporal proximity of the arrest and the confession," (2) "the presence of intervening circumstances," and (3) "the purpose and flagrancy of the official misconduct." The government has the burden of showing a "sufficient break in events to undermine the inference that the confession was caused by the Fourth Amendment violation." Oregon v. Elstad, 470 U.S. 298, 306 (1984).

Arterburn v. State, 111 Nev. 1121, 1126, 901 P.2d 668, 671 (1995) (emphasis added). Thus, when a confession is obtained during a period of unlawful detention, its voluntariness, as well as the foregoing factors must be evaluated.

In the instant case, the district court made no determination regarding the voluntariness of the confession nor any of the other pertinent factors. We conclude, nevertheless, that harmless error analysis applies to a *Gerstein/McLaughlin* violation. Although

the admission of the statements Powell made during the period of illegal detention may have been erroneous, we conclude that this possible error was harmless beyond a reasonable doubt, Chapman v. California, 386 U.S. 18 (1966), because Powell's statements during the period of illegal detention were substantially the same as the clearly admissible statements Powell made at his arrest. On both occasions, Powell told the police officers that while he was playing with the child victim, she fell backwards over his shoulder and hit her head. On both occasions, he denied ever intentionally injuring the child. Powell also admitted in both statements that he spanked the child. Furthermore, the other evidence adduced at trial was so compelling that it is unreasonable to conclude that excluding the statements made during the period of illegal detention would have changed the result.

We affirm the judgment of the district court.

YOUNG and ROSE, JJ., concur.

STEFFEN, C. J., concurring in result:

I concur in affirming the judgment entered in the district court, but do not agree that the exclusionary rule should be viewed as part of the armamentaria to be used in remedying or resolving violations of the *Gerstein/McLaughlin* rule. The exclusionary rule penalizes truth and accountability and provides windfalls to criminal defendants. I personally applaud the United States Supreme Court in progressively retrenching the reach of this inefficacious rule.

The plain fact of the matter is that the exclusionary rule is a failure. There is little evidence that it deters police misconduct, and it has extremely limited beneficial aspects to society; it primarily operates to facilitate the avoidance of accountability by criminal defendants.[1] To conclude, as the majority apparently does, that the exclusion of the most cogent evidence of guilt should be one of the options for dealing with errors or derelictions performed by clerks, judges, deputy district attorneys, jail administrators or arresting officers is not, in my view, a productive ruling. Human error will continue to occur, but now the

---

[1] *See, e.g.*, Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U. Chi. L. Rev. 665 (1970); Schroeder, *Deterring Fourth Amendment Violations: Alternatives to the Exclusionary Rule,* 69 Geo. L.J. 1361 (1981); Wilkey, *The Exclusionary Rule: Why Suppress Valid Evidence?,* 62 Judicature 214 (1978); Caldwell & Chase, *The Unruly Exclusionary Rule: Heeding Justice Blackmun's Call to Examine the Rule in Light of Changing Judicial Understanding About Its Effects Outside the Courtroom,* 78 Marq. L. Rev. 45 (1995); Ranney, *The Exclusionary Rule—the Illusion vs. the Reality,* 46 Mont. L. Rev. 298 (1985).

result may be an added obstacle to criminal convictions, all to the benefit of criminal defendants who are undeserving of such judicial largesse.

There are other methods of dealing with human error that do not penalize society and create windfalls for criminal defendants. One such remedy for a failure to conduct a probable cause hearing within forty-eight hours would be to require the release of the defendant, thus burdening law enforcement authorities with the process of either monitoring the defendant's whereabouts or relocating him or her after the release in order to effectuate another arrest. This would promote greater vigilance on the part of the police and other responsible officials especially with respect to arrestees suspected of violent criminal conduct. It would appear that release may eventually be required in any event where the defendant's incarceration is challenged as unlawful under the *Gerstein/McLaughlin* rule, and in most cases that could prove more friendly to society than the exclusion of evidence that would render prosecution impossible or ineffectual.

In any event, I agree with the majority's harmless error analysis and perceive no basis for granting Powell relief from his judgment and sentence.

For the reasons briefly mentioned above, I concur only in affirming the judgment of the district court.

SPRINGER, J., concurring in the result:

Although I do not share CHIEF JUSTICE STEFFEN's opinion concerning the exclusionary rule, I agree that the exclusionary rule is not an appropriate remedy where the only Fourth Amendment infirmity is violation of the *Gerstein/McLaughlin* rule. I would hold that a confession given under the circumstances of this case is admissible so long as it is voluntary. I do not agree with the majority that the additional factors set forth in Oregon v. Elstad, 470 U.S. 298, 306 (1984), and Arterburn v. State, 111 Nev. 1121, 1126, 901 P.2d 668, 671 (1995), must also be applied. Those factors were created to analyze the admissibility of confessions made by defendants following an unlawful arrest and, on their face, make little sense in a case such as this.

In the present case, Powell's arrest was eventually determined to have been supported by probable cause. Moreover, as stated in our earlier opinion: "Powell does not challenge the voluntariness of his statements, nor is there any indication in the record that the statements were involuntary." Powell v. State, 108 Nev. 700, 706, 838 P.2d 921, 925 (1992). I believe these facts sufficient to establish the admissibility of Powell's second custodial confession. Accordingly, I concur only in affirming the judgment and sentence of the district court.