*886
 
 OPINION
 

 Per Curiam:
 

 At the time of the events leading to his conviction, the appellant, Peter Quinn Elvik, was fourteen years old and lived with his grandparents in Carson City, Nevada. Until approximately one week before Elvik committed the charged offenses, he resided with his mother in Tustin, California, where he had a thirteen-year-old girlfriend. Several hours before dawn on August 31, 1995, Elvik took a twelve-gauge shotgun from his grandparents’ home and walked 14.7 miles to the Carson City Gun Range. A sixty-two-year-old man named William Gibson arrived at the range shortly thereafter and commenced target shooting with a pistol. Elvik shot Mr. Gibson several times with the twelve-gauge shotgun, took Mr. Gibson’s pistol, and fled in Mr. Gibson’s car.
 
 [1]
 
 
 *887
 
 On the following day, police officers located Mr. Gibson’s car in the parking lot of a motel in Costa Mesa, California. Elvik and his girlfriend were registered at the motel and fled when the police arrived. Elvik’s girlfriend was apprehended near the motel shortly thereafter, and Elvik was arrested near his mother’s home on the following evening.
 

 After his arrest, Elvik was taken to the Tustin Police Department, where Tustin police detectives interrogated him for two hours and twenty minutes. Elvik’s mother was not present at the interrogation, and he did not yet have legal counsel. The detectives informed Elvik of his
 
 Miranda
 
 rights,
 
 [2]
 
 and he agreed to speak with the detectives. During the interrogation, Elvik repeatedly claimed that he did not remember being involved in the shooting because he was under the effects of a large dose of LSD at the time; however, near the end of the interrogation, Elvik discussed the shooting incident. Elvik was then booked into the Orange County Juvenile Hall. The following day, Elvik signed a written waiver of his
 
 Miranda
 
 rights and was interrogated by one of the Tustin detectives and two detectives from the Carson City Sheriff’s Office for approximately ninety minutes.
 

 A Nevada arrest warrant and criminal complaint were filed on September 4, 1995, and, on September 6, 1995, Elvik was charged with open murder with the use of a deadly weapon
 
 [3]
 
 (Count I) and-robbery with the use of a deadly weapon
 
 [4]
 
 (Count II). Elvik was extradited to Carson City on September 14, 1995, and formally arraigned on September 15, 1995. Elvik was tried before a jury and, following a conviction on each count, the district court sentenced Elvik to a prison term of life with the possibility of parole for Count I, plus an identical term for a deadly weapon enhancement. For Count II, Elvik was sentenced to a term of 48 to 150 months, plus an identical term for a deadly weapon enhancement. All of the terms are to run consecutively.
 

 Restraint during trial
 

 Elvik claims that he was physically restrained in the jury’s presence during the guilt and penalty phase of his trial, in violation of his constitutional rights. A defendant’s rights are violated when he is made to appear before a jury in shackles during the guilt phase of a trial, and, “when such error has occurred, it is our duty to reverse a conviction
 
 unless it is clear that the defendant was not prejudiced
 
 thereby.” Grooms v. State, 96 Nev. 142, 144,
 
 *888
 
 605 P.2d 1145, 1146 (1980) (citations omitted) (emphasis added). However, constitutional protection is diminished during the penalty phase because the defendant is no longer entitled to a presumption of innocence. See Canape v. State, 109 Nev. 864, 872, 859 P.2d 1023, 1028 (1993). A defendant may be shackled at sentencing, but “only when used as a last resort to protect an essential state interest-such as maintaining public safety or assuring the decorum of the proceedings.” Duckett v. Godinez, 67 F.3d 734, 747 (9th Cir. 1995).
 

 As an initial matter, the parties disagree about whether Elvik was shackled for the entire duration of the trial, or only during the penalty phase.
 
 [5]
 
 This distinction is important because, although the United States Court of Appeals for the Ninth Circuit applies the same standard to both the guilt and penalty phases of a trial,
 
 see Duckett, 61
 
 F.3d at 748, this court in
 
 Grooms
 
 set forth a rule against shackling during the guilt phase in the absence of exceptional circumstances.
 
 Grooms,
 
 96 Nev. at 144, 605 P.2d at 1146.
 

 As evidence that he was shackled during the guilt phase of his trial, Elvik offers only a portion of the guilt phase trial transcript in which the parties discussed, outside the presence of the jury, the State’s request to have Elvik step down from the witness stand to participate in a reenactment of the shooting incident. The court stated: “Mr. Elvik has got to be taken out of restraints and put out there. And I’ll let you do this, but you will do it — when you’re done with that, I won’t have him wandering around again.”
 

 Although the district court did use the term “restraints” in reference to Elvik, we also note that Elvik’s counsel did not object to Elvik’s alleged restraint during the guilt phase, and offers no other evidence that Elvik was restrained at this time. Elvik discusses the rules for penalty phase shackling in his opening brief, and does not discuss the evidence that he was shackled during the guilt phase until his reply brief.
 
 [6]
 
 Accordingly, the State had no opportunity to address Elvik’s contention with specificity.
 

 In light of the paucity of evidence on this issue, we are particularly mindful of the State’s motion to strike selected portions of Elvik’s opening brief, which included affidavits from the court bailiff and a deputy sheriff who were present at Elvik’s trial. The bailiff and the deputy sheriff, who supervised Elvik as he entered and exited the courthouse, each signed a sworn affidavit stating that Elvik was not shackled or otherwise restrained while in the courthouse during the guilt phase of his trial. Based on these affi
 
 *889
 
 davits, Elvik’s counsel’s failure to object to the alleged guilt phase shackling, and the lack of clear evidence supporting Elvik’s allegation, we believe that the district court’s reference merely reflected an error or a poor choice of words, and that Elvik was not shackled during the guilt phase of his trial.
 

 Elvik next argues that the district court erred in allowing an armed guard to stand near him during the reenactment of the shooting incident. Elvik cites no authority suggesting that a guard positioned in close proximity to a defendant violates the constitutional protections discussed above. Moreover, the district court apparently sought to minimize any potential prejudice to Elvik, as it instructed counsel to control Elvik’s movement around the courtroom in order to “minimize [the guard] being anyplace close.” Accordingly, we conclude that this argument is meritless.
 

 Finally, Elvik argues that the district court erred in allowing heavily armed police officers to be posted around the courthouse, in view of the jury, during the penalty phase. Elvik’s counsel informed the district court that he had witnessed the jurors walking past police officers armed with “automatic weapons,” and moved for a mistrial on the basis of potential prejudice to Elvik.
 

 The district court advised counsel that high security was necessary because police officers had informed the court that they had monitored Elvik’s telephone calls placed from the jail, and that Elvik had conveyed to a friend a plan to escape from the courtroom, and had solicited his help. Elvik had hidden a piece of wire with which he hoped to pick the lock of his handcuffs during a bathroom visit. He then planned to jump from the window of the courthouse and escape in a car driven by one of his friends. Police later located and confiscated the wire, but the district court was still concerned that Elvik, with aid from his friends, might attempt to escape. As a deterrent to any such attempt, the district court requested the heavily armed police officers’ presence, and warned Elvik that neither he nor his friends should attempt to effect an escape. The district court later explained to the jury that high security was frequently used in “emotionally-charged” cases, and that it did not “mean anything as it relates to [Elvik’s] sentencing.”
 

 Although Elvik provides no authority directly concerning the use of armed guards during a penalty phase proceeding, we conclude that, even under the analysis for shackling a defendant during such proceedings, Elvik’s constitutional rights were not violated. The Ninth Circuit Court of Appeals held in
 
 Duckett
 
 that shackling is permissible during penalty phase proceedings if two
 
 *890
 
 requirements are satisfied. First, the court must be persuaded by “compelling circumstances” that some measure is needed to maintain security in the courtroom.
 
 Duckett,
 
 67 F.3d at 748. Second, the court must pursue less restrictive alternatives.
 
 Id.
 
 Elvik’s escape plans and prior lethal action, albeit in claimed self-defense, constituted compelling circumstances. We are aware of no apparent less restrictive alternative, and note that Elvik fails to suggest one. Accordingly, we conclude that the district court complied with the requirements set forth in
 
 Duckett.
 

 Elvik’s inculpatory statements
 

 Elvik argues that the district court erred in admitting the statements that he made during the interrogation conducted by Tustin police officers on the evening of his arrest because he did not knowingly waive his
 
 Miranda
 
 rights, his mother was not present, he was not informed that his statement could be used against him in criminal court and he could be tried as an adult, and his statements were coerced. Elvik first claims that he did not waive his
 
 Miranda
 
 rights because, after one of the officers recited the rights and asked Elvik if he wished to speak to the officers, Elvik replied “yea, I guess.” Elvik insists that this reply was ambiguous, and did not constitute a formal waiver.
 

 We conclude that the language of Elvik’s reply was sufficient to indicate his agreement to speak with the officers. Elvik’s colloquial style of verbal expression throughout the interrogation was consistent with his reply, suggesting that his choice of the words “yea, I guess,” rather than “yes,” was not indicative .of an unwillingness to speak to the officers. For example, the officer who read Elvik his
 
 Miranda
 
 rights stopped after each passage to ask Elvik if he understood, to which Elvik’s replies were “ah huh,” “yeah,” “yeah,” and “ah huh,” respectively.
 

 Elvik next contends that the interrogating officers violated two requirements that apply only to the interrogation of juveniles. Specifically, the officers did not allow Elvik’s mother to be present during the interrogation, and did not advise him that his statements could be used in criminal court. Elvik’s mother was present at the police station during Elvik’s interrogation, and signed a consent form to allow the interrogation, but she was not allowed to be present during the interrogation.
 

 When a defendant waives his
 
 Miranda
 
 rights and makes a statement during a custodial interrogation, the State bears the burden of proving voluntariness, based on the totality of the circumstances, by a preponderance of the evidence. Quiriconi v. State, 96 Nev. 766, 772, 616 P.2d 1111, 1114 (1980). Although Elvik
 
 *891
 
 provides no authority requiring the presence of a parent during the interrogation of a juvenile, we believe that, in light of Elvik’s age, the absence of a parent during his interrogation should be considered in reviewing the totality of the circumstances bearing on the voluntariness of his statements.
 
 See
 
 People v. Lara, 432 P.2d 202 (Cal. 1967) (age and presence of parent are factors in determining voluntariness).
 

 The interrogating officers failed to inform Elvik that his statements could be used against him in an adult trial in criminal court.
 

 Clearly, neither police officers nor juvenile authorities should be allowed to mislead a youth in order to obtain a confession. A juvenile should be advised of his rights and informed of the possibility of an adult trial. But where the nature of the charges and the identity of the interrogator reflect the existence of an unquestionably adversary police atmosphere and the suspect is reasonably mature and sophisticated with regard to the nature of the process, resulting statements will be admissible in a criminal trial provided that the record otherwise supports a finding of voluntariness.
 

 Quiriconi, 96
 
 Nev. at 771, 616 P.2d at 1114 (citation omitted). Although Elvik was not informed of the possibility of an adult trial, he knew that he was being questioned by police investigators who wished to discuss the shooting incident, and the interrogation took place at a police station. Hence, the nature of the charges and the identity of the interrogator reflected the existence of an “unquestionably adversary police atmosphere.” We further note that Elvik was reasonably mature and sophisticated with regard to the nature of the process, as he is of above average intelligence and had been arrested on at least one previous occasion.
 
 [7]
 
 Accordingly, we conclude that the interrogating officers’ failure to explain to Elvik that his statements could be used against him in an adult trial in criminal court is not alone sufficient to render Elvik’s statements inadmissible.
 

 Finally, Elvik argues that his statements were not voluntary because the interrogation was coercive. A confession is inadmissible unless freely and voluntarily given, Rowbottom v. State, 105 Nev. 472, 482, 779 P.2d 934, 940 (1989), and, “[i]n order to be
 
 *892
 
 voluntary, a confession must be the product of a ‘rational intellect and a free will.’” Passama v. State, 103 Nev. 212, 213-14, 735 P.2d 321, 322 (1987) (quoting Blackburn v. Alabama, 361 U.S. 199, 208 (1960)). In determining whether a confession is the product of a free will, this court employs a “totality of the circumstances test” to determine “whether the defendant’s will was overborne when he confessed.”
 
 Passama,
 
 103 Nev. at 214, 735 P.2d at 323;
 
 see also
 
 Schneckloth v. Bustamonte, 412 U.S. 218 (1973). However, “a confession obtained by physical intimidation or psychological pressure is inadmissible.” Thompson v. State, 108 Nev. 749, 753, 838 P.2d 452, 455 (1992) (citations omitted).
 

 The officers did not threaten Elvik during the interrogation, and Elvik does not allege any specific instance of physical or psychological intimidation. False promises or misleading statements also do not appear to be an issue, as the officers indicated that they could not promise Elvik lenient treatment if he agreed to talk about the shooting incident. Although the officers did not intimidate or mislead Elvik, Elvik argues that the officers applied prolonged psychological pressure, to which he was particularly vulnerable at the time.
 

 Throughout the interrogation, Elvik claimed that he did not remember shooting Mr. Gibson. Despite Elvik’s insistence, the officers repeatedly stated that Elvik did remember, and attempted to persuade Elvik to discuss the incident. The officers appealed to Elvik’s conscience, suggested that his girlfriend and his mother would want him to tell the truth, and told him that things would be better for him in the future if he would tell the truth. Elvik raises numerous examples of the coercive pressure he claims to have been under during the interrogation; however, a line by line discussion of the interrogation would not facilitate our analysis.
 

 The United States Supreme Court, in Gallegos v. Colorado, 370 U.S. 49, 54 (1962), recognized that juveniles are more susceptible than adults to high pressure interviewing tactics when a parent or attorney is not present:
 

 [A] 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police. That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights. . . .
 

 ... A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not.
 

 
 *893
 
 We conclude that the investigators’ tactics did not involve physical or psychological intimidation and, therefore, were not alone coercive. Despite this conclusion, we also acknowledge that the totality of the circumstances attendant to the interrogation were such as to create a close question concerning the voluntariness of Elvik’s inculpatory statements.
 

 The fact that Elvik did not have his mother or an attorney present, coupled with Elvik’s youth and the officers’ persistent refusal to accept Elvik’s claimed failure to remember the shooting, cast some doubt on the voluntariness of Elvik’s statements. However, Elvik’s intelligence and experience with the criminal justice system also bear on the voluntariness of his statements. “The [district court’s] decision regarding voluntariness is final unless such finding is plainly untenable.” Boggs v. State, 95 Nev. 911, 913-14, 604 P.2d 107, 109 (1979). Both the district court and the jury determined that Elvik’s statements were made voluntarily and, although competing factors create a close question in this case, we conclude that the district court’s finding was not plainly untenable.
 
 [8]
 

 Elvik next contends that his statements made at the second interrogation, which occurred on the day following his arrest, were also inadmissible. Elvik argues that the second interrogation was tainted by the impropriety of the first interrogation, and that the officers who conducted the second interrogation also failed to inform Elvik that he could face criminal charges and be tried as an adult. Based on our analysis of the first interrogation, we conclude that the district court’s finding that Elvik’s statements made at the second interrogation were voluntary was not plainly untenable.
 

 Effectiveness of counsel
 

 Elvik claims that he was denied effective assistance of counsel, based on various instances in which Elvik’s counsel failed to object, failed to file a motion, or failed to submit a jury instruction. “Appellants can claim ineffective assistance of counsel at post-conviction proceedings”; however, “[s]uch claims may not be raised on direct appeal, unless there has already been an evi-dentiary hearing.” Feazell v. State, 111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995) (citations omitted). The State contends, and
 
 *894
 
 Elvik does not deny, that Elvik’s claim of ineffective assistance of counsel has yet to be considered at an evidentiary hearing. Thus, we decline to consider Elvik’s argument.
 

 Elvik’s motion to dismiss the robbery count
 

 Elvik argues that, because he was not certified as an adult with respect to the robbery count, the district court erred in refusing to dismiss the robbery count. Former NRS 62.080(2) (amended 1997) provided, in pertinent part, that:
 

 If a child 14 years of age or older is charged with:
 

 (b) Any offense involving the use or threatened use of a deadly weapon or an attempt to commit such an offense, and the child was 14 years of age or older at the time he allegedly committed the offense charged, the juvenile division of the district court, after full investigation, shall certify the child for proper criminal proceedings to any court which would have jurisdiction to try the offense if committed by an adult
 

 The certification requirement of former NRS 62.080(2)(b) is based on the assumption that the juvenile division of the district court has initial jurisdiction over the matter. The juvenile division has exclusive original jurisdiction over a child who commits a delinquent act. NRS 62.040(1). The statutory definition of a delinquent act, at the time of Elvik’s trial, did not include “[mjurder or attempted murder or any related crime arising out of the same facts as the murder or attempted murder.” NRS 62.040(l)(b)(l) (amended 1997).
 

 This court has held that a juvenile defendant does not need to be certified as an adult when the charged offense is excluded from the statutory definition of a delinquent act. Shaw v. State, 104 Nev. 100, 102-03, 753 P.2d 888, 889 (1988). The robbery in this case arose out of the same facts as the murder and, therefore, was not a delinquent act under NRS 62.040(l)(b)(l). Accordingly, we conclude that the district court did not err in denying Elvik’s motion to dismiss the robbery count,
 

 Failure to bring Elvik before a magistrate in a timely manner
 

 Elvik claims that he was arrested on September 1, 1995, interrogated on September 1-2, 1995, extradited to Carson City on September 14, 1995, and formally arraigned on September 15, 1995. Elvik argues that the fourteen-day period between his arrest and his arraignment violated his right to a timely arraignment,
 
 *895
 
 warranting dismissal of the case or suppression of evidence. Elvik moved for dismissal or preclusion of evidence on this basis, but the district court denied his motion.
 

 Pursuant to NRS 171.178(1), a person who has been arrested must be brought before a magistrate “without unnecessary delay.”
 
 [9]
 
 The purpose of NRS 171.178(1) is to ensure that the accused is promptly informed of his privilege against self-incrimination. Huebner v. State, 103 Nev. 29, 32, 731 P.2d 1330, 1333 (1987). Failure to bring a defendant before a magistrate without unnecessary delay does not warrant reversal absent a showing of prejudice to the defendant’s constitutional rights.
 
 Id.
 

 Elvik was apprised of his
 
 Miranda
 
 rights, waived those rights, and made inculpatory statements in the hours immediately following his arrest. A similar situation was recently addressed in Powell v. State, 113 Nev. 41, 930 P.2d 1123 (1997), in which we concluded that failure to bring the defendant before a magistrate within the required time period did not warrant exclusion of the defendant’s subsequent confession because the defendant had made inculpatory statements at the time of his arrest, before the delay in bringing him before a magistrate. Our holding in
 
 Powell
 
 was consistent with Deutscher v. State, 95 Nev. 669, 680, 601 P.2d 407, 414 (1979) (citations omitted),
 
 vacated on other grounds sub nom.
 
 Angelone, Director, Nevada Dept. of Prisons v. Deutscher, 500 U.S. 901 (1991), in which this court opined:
 

 We subscribe to the rule of law which provides that when an accused voluntarily waives his right to silence and his right to counsel, he concurrently waives his right to be seasonably arraigned. The reason for this rule is that the primary purpose of an arraignment is to inform the defendant of his rights. But a delay in arraignment is not prejudicial when a defendant has already been advised of his rights, was promptly so advised, and voluntarily waived those rights.
 

 Based on
 
 Powell
 
 and
 
 Deutscher,
 
 Elvik’s waiver of his
 
 Miranda
 
 rights and subsequent inculpatory statements, which occurred within forty-eight hours of his arrest, effected a waiver of his right to a timely arraignment and, alternatively, establish that his constitutional rights were not prejudiced by the delay. Moreover, Elvik was arraigned within forty-eight hours of his arrival in Carson City, and the State’s delay in arraigning Elvik prior to his arrival in Nevada was necessary because Elvik’s physical presence
 
 *896
 
 in Nevada was required to bring him before a magistrate. Based on these considerations, we conclude that the district court did not err in denying Elvik’s motion to dismiss the charges against him or to suppress his inculpatory statements.
 

 Elvik’s girlfriend’s testimony
 

 At Elvik’s trial, Elvik’s girlfriend testified that Elvik made incriminating statements to her bearing on his involvement in the charged offense. Specifically, she testified that Elvik told her, in the days immediately preceding the offense, that he “wanted to rob a store and get some money to buy a car so he could come back down.” Elvik’s girlfriend also testified that Elvik stated, as they prepared to flee from the motel at which the police discovered Mr. Gibson’s automobile, that “[h]e wanted to shoot the police and leave in the car that [they] had come in.”
 

 The district court permitted Elvik’s girlfriend’s testimony concerning the incriminating statements that Elvik allegedly made to her based on its determination that Elvik’s statements were “admissible to show that [Elvik] act[ed] in either motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident under [NRS] 48.045.” Elvik argues, without authority, that the district court erred in permitting the testimony because it constituted inadmissible hearsay. Alternatively, Elvik argues that his statements were merely a display of “false bravado,” and should have been excluded because they were more prejudicial than probative.
 
 See
 
 NRS 48.035(1).
 

 NRS 51.035 provides, in pertinent part, that:
 

 “Hearsay” means a statement offered in evidence to prove the truth of the matter asserted unless:
 

 3. The statement is offered against a party and is:
 

 (a) His own statement, in either his individual or representative capacity;
 

 Elvik’s statements, as related by his girlfriend, were his own statements, and were offered against him. As such, the statements fell under NRS 51.035(3)(a) and, therefore, did not constitute hearsay. Moreover, NRS 51.105(1) provides that “[a] statement of the declarant’s then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain and bodily health, is not inadmissible under the hearsay rule.” Each of Elvik’s statements at issue conveyed a then existing “intent, plan, motive, [or] design.” Accordingly, we conclude that, even if Elvik’s statements did constitute hearsay, they would be admissible pursuant to NRS 51.105(1).
 

 
 *897
 
 We further conclude that the statements were relevant; they bear on the plausibility of Elvik’s claim that he did not intend to kill Mr. Gibson for the purpose of stealing his automobile but, rather, shot Mr. Gibson because he believed that Mr. Gibson was drawing a handgun for the purpose of shooting Elvik. Elvik’s self-defense argument is clearly inconsistent with his stated plan to commit a robbery as a means to obtain an automobile and to shoot police officers rather than surrendering and explaining that he fired in self-defense.
 
 See
 
 NRS 48.015 (“ ‘[R]elevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.”).
 

 Finally, the district court concluded that the unfair prejudicial effect of Elvik’s statements did not substantially outweigh their probative value.
 
 See
 
 NRS 48.035(1). The district court has discretion to admit or to exclude evidence after balancing the prejudicial effect against the probative value. Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). The decision to admit evidence is within the sound discretion of the district court and will not be disturbed unless it is manifestly wrong. Wesley v. State, 112 Nev. 503, 510, 916 P.2d 793, 798 (1996). Based on the previously discussed relevance of Elvik’s statements, we conclude that the district court was not manifestly wrong in admitting Elvik’s girlfriend’s testimony.
 

 The reasonable doubt instruction
 

 Elvik argues that his constitutional right to due process was violated by the jury instruction offered to define reasonable doubt. The instruction at issue provided, in pertinent part:
 

 A reasonable doubt is one based on reason. It is not mere possible doubt, but it is such a doubt as would
 
 govern or control
 
 a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.
 

 (Emphasis added.) Elvik contends that the “govern or control” language of the instruction inflates the degree of doubt required to constitute a reasonable doubt, and impermissibly shifts the burden of proof to the defendant. Elvik also focuses on the “char
 
 *898
 
 acterization of reasonable doubt as an ‘actual and substantial’ doubt,” and contends that this language is also impermissible. Elvik bases his arguments on Cage v. Louisiana, 498 U.S. 39 (1990) (words “substantial” and “grave” coupled with “moral certainty” understated degree of proof required),
 
 overruled on other grounds by
 
 Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991).
 

 The jury instruction at issue in this case, which is a verbatim excerpt of language appearing in NRS 175.211, was addressed by this court in Lord v. State, 107 Nev. 28, 806 P.2d 548 (1991).
 
 [10]
 
 This court held that the instruction was clearly distinguishable from the instruction condemned in
 
 Cage,
 
 and did not violate the defendant’s due process rights. Moreover, Elvik’s objection to the characterization of reasonable doubt as an “actual and substantial” doubt is misplaced; the instruction in this case did not include the word “substantial,” and, in any event, this court in
 
 Lord
 
 approved the phrase “actual and substantial” as a characterization of reasonable doubt. Thus, Elvik’s argument is without merit.
 

 The jury instruction on knowledge of wrongfulness
 

 Elvik argues that the district court erred in refusing to issue one of Elvik’s proposed jury instructions. Elvik claims, and the State does not deny, that the district court refused Elvik’s request to issue an instruction which stated:
 

 All persons are liable to punishment except those belonging to the following class as it applies to this case:
 

 Children between the ages of eight years and fourteen years, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness. Peter Elvik was fourteen years old on August 31, 1995.
 

 Elvik’s proposed instruction was based on NRS 194.010, which provides, in pertinent part:
 

 All persons are liable to punishment except those belonging to the following classes:
 

 2. Children between the ages of 8 years and 14 years, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness.
 

 Although Elvik’s proposed instruction fairly restates the provi
 
 *899
 
 sions of NRS 194.010, we conclude that, based on the facts of this case, the district court did not err in refusing to issue the instruction. A district court need not instruct the jury on principles that are redundant with or rendered nugatory by other issues before the jury, or that do not bear on the disposition of the case. Elvik’s defense rested on a claim that Elvik believed that he was defending himself. The jury had to reject Elvik’s claim of self-defense in order to convict him of murder. Elvik offered no affirmative defense of insanity, and did not otherwise put his capacity to discriminate between right and wrong at issue. Hence, under the circumstances and arguments of the case, the jury’s rejection of the self-defense claim and determination that Elvik was guilty of murder beyond a reasonable doubt implicitly involved a conclusion that clear proof established that Elvik knew the wrongfulness of his actions.
 

 Even if the district court erred in refusing to issue Elvik’s jury instruction, we conclude that any error was harmless. The aforementioned evidence of Elvik’s plan to commit a robbery in order to procure an automobile, attempts to evade police officers after the crime, and evasive answers to the officers’ questions constitute clear proof that Elvik understood the wrongfulness of his actions.
 
 See
 
 Poole v. State, 97 Nev. 175, 625 P.2d 1163 (1981) (thirteen-year-old’s attempt to hide murder weapon and fabrication of alibi constituted sufficient knowledge of wrongfulness under NRS 194.010).
 

 Improper influence
 

 Elvik contends that the district court prejudiced him by rushing the jury’s deliberation in order to complete the proceedings before Nevada Day. On the day before the jury’s verdict, two days before Nevada Day, the district court informed the members of the jury that they might have to deliberate into the evening of the following day and that, if a verdict was not reached, the jury might have to deliberate on Nevada Day as well. After these remarks, the court asked the jurors if deliberating on Nevada Day would interfere with their Nevada Day commitments, and was advised by two of the jurors that it would be a problem. The court then asked the attorneys if they wanted to “have the deliberations start and then take Nevada Day off.” Elvik’s counsel responded, “I leave it to your discretion, Your Honor.”
 

 On the following day, October 30, 1996, the jury commenced deliberation at 4:05 p.m., without objection by Elvik’s counsel, and returned a guilty verdict at 9:50 p.m. The State claims that the jurors enjoyed a lengthy recess that day between a brief examination of a witness at 9:00 a.m. and the time that the jury reconvened at 1:30 p.m.
 

 
 *900
 
 We conclude that the district court’s statements to the jury, coupled with the jury’s deliberation until 9:50 p.m. after a partial day of trial, are not sufficient to demonstrate that the court was biased or otherwise rushed the jury’s verdict. Although the jurors’ own plans for Nevada Day could conceivably have influenced the duration of the deliberation, the district court did not force Elvik to accept the possibility of jury deliberation on Nevada Day. Instead, the district court gave Elvik the opportunity to “have the deliberations start and then take Nevada Day off.” Elvik’s counsel chose to leave the matter to the district court’s discretion, rather than to raise concerns about possible bias or influence, and did not object to the jury’s commencement of deliberation at 4:05 p.m. on the evening before Nevada Day. Thus, Elvik’s argument is without merit.
 

 Cumulative error
 

 Elvik argues that the cumulative effect of the alleged errors discussed in this appeal deprived him of his constitutional right to a fair trial.
 
 See
 
 Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985) (reversal of conviction warranted by cumulative effect of errors). Based upon our aforementioned conclusions regarding Elvik’s claims of error, the cumulative effect of any such error clearly was not sufficient to deprive Elvik of his right to a fair trial.
 

 Based on the foregoing analysis, we affirm the judgment of the district court in its entirety.
 

 [1]
 

 Elvik concedes that he shot Mr. Gibson, but claims that, after Elvik “made a statement about” Mr. Gibson's car keys, Mr. Gibson began to draw his pistol from its holster, causing Elvik to fire the shotgun in self-defense.
 

 [2]
 

 See
 
 Miranda v. Arizona, 384 U.S. 436, 479 (1966).
 

 [3]
 

 NRS 200.010, NRS 200.020, NRS 200.030 and NRS 193.165.
 

 [4]
 

 NRS 200.380 and NRS 193.165.
 

 [5]
 

 The district court’s reasons for imposing high security in the courtroom are discussed below, in the analysis of Elvik’s objection to the posting of heavily armed guards during the penalty phase of his trial.
 

 [6]
 

 See
 
 NRAP 28(c) (“Reply briefs shall be limited to answering any new matter set forth in the opposing brief.”).
 

 [7]
 

 Elvik was arrested for the present offense and interrogated six days before his fifteenth birthday. A psychologist testified that Elvik performed “quite highly” on an intelligence test. The State claims that Elvik was also arrested on at least one prior occasion, for stealing a car from his mother’s car lot, and was read his
 
 Miranda
 
 rights at that time.
 

 [8]
 

 Following a hearing on Elvik’s motion to suppress the statements that he made during each of the interrogations, the district court determined that Elvik’s statements were voluntary. The legal standards for determining vol-untariness were also submitted to the jury, as required by Laursen v. State, 97 Nev. 568, 634 P.2d 1230 (1981).
 

 [9]
 

 A magistrate may order the release of a person who has not been brought before the magistrate within seventy-two hours if the magistrate is not satisfied with the prosecution’s explanation for the delay. NRS 171.178(3). Moreover, the United States Supreme Court has held that a delay of forty-eight hours presumptively violates the Fourth Amendment. County of Riverside v. McLaughlin, 500 U.S. 44 (1991).
 

 [10]
 

 The only difference between the pertinent portions of the instruction presently at issue and the instruction in
 
 Lord
 
 is that the
 
 Lord
 
 instruction characterized reasonable doubt as an “actual and substantial” doubt,
 
 id.
 
 at 38-40, 806 P.2d at 554-55, whereas the word “substantial” does not appear in the present instruction. This omission reflects the legislature’s removal of the word “substantial” from NRS 175.211 in 1991.