THE STATE OF NEVADA, APPELLANT, *v.*
KITRICH POWELL, RESPONDENT.

No. 45263

July 13, 2006                                       138 P.3d 453

---

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *Steven S. Owens*, Chief Deputy District Attorney, Clark County, for Appellant.

*Cristalli & Saggese, Ltd.*, and *Michael V. Cristalli*, Las Vegas; *Christopher R. Oram*, Las Vegas, for Respondent.

## OPINION

By the Court, BECKER, J.:

Respondent Kitrich Powell filed a petition for a writ of habeas corpus challenging his first-degree murder conviction and death sentence. The district court denied the petition for the most part, a decision which we affirmed in an earlier appeal. However, the district court also eventually determined that Powell's trial counsel were ineffective in failing to call Powell's brothers to testify at the penalty phase of his trial. It therefore vacated his death sentence and ordered a new penalty hearing. We conclude that Powell was not prejudiced by his counsel's deficient performance and reverse.[1]

### FACTS

In 1991, a jury convicted Powell of first-degree murder of his girlfriend's four-year-old daughter, Melea Allen. Powell had subjected the child to repeated beatings which eventually resulted in a head injury causing her death. Following a penalty hearing, the jury imposed a sentence of death. This court affirmed Powell's conviction, but the United States Supreme Court vacated this court's judgment and remanded.[2] On remand, this court concluded that the erroneous admission of evidence of statements that Powell made during a period of illegal detention was harmless beyond a reasonable doubt.[3]

In February 1998, Powell timely filed in proper person a post-conviction petition for a writ of habeas corpus. Various attorneys filed a total of four supplemental pleadings on Powell's behalf in December 1998, July 1999, November 2000, and October 2001. In July 2002, the district court denied Powell's habeas claims relating to the guilt phase of his trial. But the court found that Powell's counsel had been ineffective during the penalty phase by failing to call his father and two brothers to testify, and it ordered a new penalty hearing. The State appealed, and Powell cross-appealed. In August 2003, this court reversed the district court's grant of a new penalty hearing and remanded for an evidentiary hearing on counsel's failure to call Powell's family members to testify. We also reversed the district court's denial of Powell's claim that his counsel were ineffective in failing to object to alleged prosecutorial misconduct during the penalty hearing and

---

[1]Powell has filed a motion for leave to file a supplemental brief. Cause appearing, we grant the motion, and in resolving this appeal we have considered counsel's supplemental argument submitted provisionally with the motion.

[2]*Powell v. State (Powell I)*, 108 Nev. 700, 838 P.2d 921 (1992), *vacated by Powell v. Nevada (Powell II)*, 511 U.S. 79 (1994).

[3]*Powell v. State (Powell III)*, 113 Nev. 41, 47, 930 P.2d 1123, 1126 (1997).

remanded for a determination of that claim on the merits. We otherwise affirmed the district court's order.[4]

On remand, the district court held evidentiary hearings in December 2003 and February 2005. Powell's trial attorneys James Mayberry and David Schieck testified, as did defense investigator Lorne Lomprey. Before the trial, Mayberry spoke to Powell's father by phone, and Lomprey met the father at his home in Pennsylvania; both asked him to testify for Powell, but he refused. None of the three recalled contacting either of Powell's brothers. Schieck testified that someone from the team should have done so.

Powell's brothers, Peter and Paul Powell, also testified. Peter was Powell's younger brother and had retired from a career in the Navy. Paul was Powell's older brother and an airline pilot. At the time of the trial, Peter was stationed in Mississippi, and Paul lived in Chicago. Both testified that they were willing and able to testify for their brother at his trial but were never contacted by any one from the defense team. They would have told jurors that they loved their brother and his life was worth sparing, and they would have urged the jurors not to sentence him to death. Paul testified that he flew to Las Vegas after Powell was charged, met with his brother at the jail, and called and went to Mayberry's office, but Mayberry was not in and never contacted him.

The district court determined that trial counsel had been ineffective in failing to call Powell's brothers to testify in mitigation; it vacated his death sentence and ordered a new penalty hearing. The court stated in its order that "had the jury heard the testimony of Mr. Powell's brothers as they testified at the evidentiary hearing, there is a probability that a different outcome of the penalty phase would have occurred."

## DISCUSSION

### Timeliness

The State contends first that Powell's claim that his counsel were ineffective in failing to find his brothers and call them to testify is procedurally barred. Powell's claim was raised nearly three years after Powell's initial petition, and the State contends that it did not relate back to that petition and therefore was untimely. However, the State advances these contentions for the first time in this appeal, even though it concedes that Powell raised the claim in a supplemental pleading filed in the district court in November 2000. The State also complains that the nature of Powell's claim evolved during the proceedings below; nonetheless, the State never challenged the claim as untimely below.

---

[4]*State v. Powell*, Docket No. 39878 (Order Affirming in Part, Reversing in Part and Remanding, August 22, 2003).

"Generally, failure to raise an issue below bars consideration on appeal."[5] We nevertheless resolve the issue in this case and conclude that Powell's claim was not untimely.

To overcome the statutory procedural bars, a petitioner must demonstrate good cause for delay in filing his petition or for bringing new claims or repeating claims in a successive petition, and he must demonstrate undue or actual prejudice.[6] To establish good cause, a petitioner must show that an impediment external to the defense prevented a claim from being raised or properly resolved earlier.[7] Such impediments include cases where "the factual or legal basis for a claim was not reasonably available to counsel or . . . 'some interference by officials' made compliance [with a procedural rule] impracticable."[8] To establish prejudice, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[9]

As an initial point, NRS 34.810 does not apply here, although the State invokes it. NRS 34.810(1)(b) requires a court to dismiss a habeas petition that presents claims that could have been presented at trial, on direct appeal, or in any other proceeding unless the court finds both cause for failing to present the claims earlier and actual prejudice to the petitioner. But it is proper, as Powell has done, to claim ineffective assistance of trial counsel for the first time in a first post-conviction habeas petition, if it is timely, because such claims are generally not appropriate for review on direct appeal.[10]

As for timeliness, the State does not dispute that Powell's habeas petition filed on February 4, 1998, was timely. That petition alleged in part that Powell's counsel "failed to conduct an adequate investigation to discover and present all available mitigating evidence." In the supplemental pleading filed on November 17, 2000,

---

[5]*State v. Taylor*, 114 Nev. 1071, 1077, 968 P.2d 315, 320 (1998).

[6]NRS 34.726(1); NRS 34.810(3).

[7]*Harris v. Warden*, 114 Nev. 956, 959, 964 P.2d 785, 787 (1998).

[8]*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

[9]*United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Hogan v. Warden*, 109 Nev. 952, 960, 860 P.2d 710, 716 (1993).

[10]*Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 507 (2001).

Powell raised the specific claim that his counsel should have called his brothers to testify in mitigation. The State argues that the specific claim did not relate back to the initial claim and was therefore untimely. This argument is unpersuasive.

On its face NRS 34.726, which sets forth the relevant limitations period, applies to habeas petitions, not supplemental pleadings. NRS 34.726(1) requires "a *petition* that challenges the validity of a judgment or sentence" to be filed within one year after entry of the judgment of conviction or after this court issues its remittitur. (Emphasis added.) Likewise, the provisions regarding laches facially apply to petitions. NRS 34.800(1) provides that "[a] petition may be dismissed if delay in the filing of the *petition*" prejudices the State in responding to the petition, unless the petitioner could not reasonably have known the grounds for the petition before the prejudice occurred, or in conducting a retrial, unless a fundamental miscarriage of justice occurred in the trial or sentencing. (Emphasis added.) And NRS 34.800(2) provides for a rebuttable presumption of prejudice to the State if more than five years passes between a judgment of conviction, a sentence, or a decision on direct appeal "and the filing of a *petition* challenging the validity of a judgment of conviction." (Emphasis added.)

The State nevertheless argues that the supplementation of Powell's original petition was untimely and therefore procedurally barred. It cites *Mayle v. Felix*,[11] in which the Supreme Court held that an amended federal habeas petition did not relate back to the original petition, and thus was barred by the federal one-year limitations period, when it asserted a new claim not tied to the common core of operative facts set forth in the original pleading. The Court applied Fed. R. Civ. P. 15(c)(2), which provides that an amendment to a pleading relates back to the filing date of the original pleading when the claim asserted in the amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."[12]

The State urges the same result here pursuant to NRCP 15(c), which largely tracks the language of the federal rule. This court has articulated the standard set forth in NRCP 15(c) as follows: "If the original pleadings give fair notice of the fact situation from which the new claim for liability arises, the amendment should relate back for limitations purposes."[13] However, we have never held that NRCP 15(c) governs amendments or supplements to habeas petitions. The Nevada Rules of Civil Procedure do apply in habeas proceedings "to the extent that they are not inconsistent with NRS

---

[11]545 U.S. 644, 650, 664 (2005).

[12]*See id.* at 648.

[13]*Nelson v. City of Las Vegas*, 99 Nev. 548, 556, 665 P.2d 1141, 1146 (1983).

34.360 to 34.830,''[14] the habeas corpus statutes. This court has concluded that it "may look to general civil or criminal rules for guidance only when the statutes governing habeas proceedings have not addressed the issue presented."[15]

In this case, we do not turn to the Nevada Rules of Civil Procedure because two subsections of NRS 34.750 address "supplemental pleadings" and "further pleadings" in habeas proceedings:

> 3. After appointment by the court, counsel for the petitioner may file and serve supplemental pleadings, exhibits, transcripts and documents [within certain time limits].
>
> . . . .
>
> 5. No further pleadings may be filed except as ordered by the court.

We have stated that the latter subsection "vest[s] the district court with broad authority to order supplemental pleadings in post-conviction habeas cases."[16] Moreover, we recently held in *Barnhart v. State* that a district court has the discretion to permit a habeas petitioner to assert new claims even as late as the evidentiary hearing on the petition.[17]

We conclude therefore that the State has not shown that the district court erred in allowing Powell to supplement his petition.

The State also alleges that the passage of time has prejudiced it and cites NRS 34.800, which provides courts the discretion to dismiss a petition if delay in its filing prejudices the State. We conclude that such relief is not appropriate here. The State points out that the original penalty hearing was almost 15 years ago, that it will be difficult to gather witnesses that came from California, Oklahoma, Texas, and Pennsylvania, and that the witnesses' memories will have faded. But the lengthy time that has passed in this case is not attributable to delay by Powell. Powell's judgment of conviction was entered in June 1991. On direct appeal, this court erroneously decided that a new rule of criminal procedure announced by the Supreme Court soon after Powell's trial did not apply to his case.[18] It was not until 1997 that this court, after remand from the Supreme Court, applied the rule and finally decided Powell's direct appeal.[19] Powell then timely filed his habeas

---

[14] NRS 34.780(1).

[15] *Mazzan v. State*, 109 Nev. 1067, 1070, 863 P.2d 1035, 1036 (1993).

[16] *Miles v. State*, 120 Nev. 383, 385, 91 P.3d 588, 589 (2004).

[17] 122 Nev. 301, 303-04, 130 P.3d 650, 651-52 (2006).

[18] *Powell I*, 108 Nev. at 705 n.1, 838 P.2d at 924 n.1; *Powell II*, 511 U.S. 79.

[19] *Powell III*, 113 Nev. 41, 930 P.2d 1123.

petition in February 1998. The district court allowed it to be supplemented several times, as discussed, and granted him partial relief in July 2002. The State appealed, and this court reversed in August 2003 and remanded for an evidentiary hearing. The record indicates that Powell has not inappropriately delayed this case. The State is therefore not entitled to relief under NRS 34.800.

The district court did not abuse its discretion in permitting Powell to supplement his petition with the claim in question, and the claim is not procedurally barred.

*Ineffective assistance of counsel*

Next, the State maintains that the evidence does not support the district court's determination that trial counsel were ineffective. To establish ineffective assistance of counsel, a claimant must show that an attorney's representation fell below an objective standard of reasonableness and that the attorney's deficient performance prejudiced the defense.[20] To establish prejudice, the claimant must show that but for the attorney's mistakes, there is a reasonable probability that the result of the proceeding would have been different.[21] Judicial review of an attorney's representation is highly deferential, and a claimant must overcome the presumption that a challenged action might be considered sound strategy.[22] An attorney must make reasonable investigations or a reasonable decision that particular investigations are unnecessary.[23]

"A claim of ineffective assistance of counsel presents a mixed question of law and fact and is therefore subject to independent review,"[24] but this court reviews deferentially a district court's purely factual findings.[25] The factual allegations supporting an ineffective-assistance claim must be proven by a preponderance of the evidence.[26]

The State contends that the performance of Powell's trial counsel was neither deficient nor prejudicial. In arguing the first point, the State emphasizes the time and effort that attorney Mayberry put into preparing for the trial and investigator Lomprey's efforts in

---

[20]*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[21]*Id.* at 694.

[22]*Id.* at 689.

[23]*Id.* at 691.

[24]*Kirksey v. State*, 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996).

[25]*Lara v. State*, 120 Nev. 177, 179, 87 P.3d 528, 530 (2004).

[26]*Means v. State*, 120 Nev. 1001, 1012-13, 103 P.3d 25, 33 (2004).

Oklahoma and Pennsylvania seeking people who would testify for Powell in mitigation. The State asserts, "Although the lack of Defendant's brothers' testimony may not have been ideal for Defendant's case, it cannot be said that it rises to the level of deficient performance." We conclude that the district court reasonably determined otherwise. One of Powell's brothers testified that he flew to Las Vegas before the trial and called and went to Mayberry's office but Mayberry never contacted him. And Powell's mother testified for the defense in the penalty phase and spoke about Powell's two brothers. Further, both brothers testified that they were willing and able to testify in the penalty phase, and attorney Schieck conceded that the defense should have contacted them to determine if they should be called as witnesses. Thus, the record shows that counsel reasonably should have known about the brothers, and neither the record nor the State provides a strategic reason for not contacting them and calling them as witnesses.

However, while counsel acted deficiently in failing to call Powell's brothers to testify, we conclude that the failure was not prejudicial. There is no reasonable probability of a different penalty-phase result even if the brothers had testified. The district court found that the brothers made "impassioned pleas" on behalf of their brother. We defer to this purely factual finding, but the district court's conclusion that a different result was reasonably probable is not supported by analysis of the substance of the brothers' testimony in light of the record as a whole.

As stated above, Peter was Powell's younger brother and had retired from a career in the Navy. Paul was Powell's older brother and an airline pilot. They testified at the evidentiary hearing that had they been called to testify at trial, they would have told jurors that they loved their brother and that his life was worth sparing.

Peter's testimony revealed that although he had grown up with Powell, he had little knowledge about his older brother after that. He was not aware of his brother's murder trial when it occurred. He testified that he would have told the jury "the type of person [Powell] was growing up, and the type of person he is. He's an outstanding leader. He's a role model towards the society while I was growing up with my brother." When asked on cross-examination if he believed his brother was guilty, Peter replied, "Absolutely not. He would never do that." He testified that his memory of Powell's discharge from the Army was "a little vague." He learned from his oldest brother that Powell had been court-martialed but did not know the amount of time he spent in prison. Peter also did not know that Powell pleaded guilty to three counts of burglary and spent a year in prison in Pennsylvania. Nor did he know about Powell's later burglary and robbery convictions in Oklahoma.

We conclude that the significance of Peter's testimony was limited because of his lack of knowledge about his brother's life after childhood, most notably his unawareness of Powell's extensive criminal history. His refusal to accept Powell's guilt in this case particularly detracted from the force of his testimony. Expressing such a viewpoint to jurors who had heard and considered the evidence and found Powell guilty beyond a reasonable doubt would have been, at best, counterproductive. Finally, his conclusory belief that Powell was an ''outstanding leader'' and a ''role model'' did not carry much weight.

Powell's older brother Paul testified that he flew to Las Vegas after Powell was arrested in this case and met with his brother at the jail. It appears that the victim was then still alive and that Paul did not know until some time afterwards that his brother was eventually tried for and convicted of murder. When asked in what way his brother had redeeming value, Paul testified: ''His concern for human life and mankind. And he was always in contact with the family, so he was always a, you know, family-orientated person. And he always had, you know, in relationship with somebody. He was not a loner by any means.'' He also questioned his brother's guilt, stating ''that the information that was presented [at trial] probably could have been misleading and that Kitrich was a very, very honorable person and did not cause any person diligent harm by premeditation.'' When asked on cross-examination why he felt that Powell had a concern for human life, Paul recalled a puppy that they had as children and how Powell cared for it when it broke its leg. He also recalled Powell's concern after hitting Paul with a stick while playing. Paul's knowledge about Powell after childhood was limited. He testified that Powell was discharged from the Army ''for administrative purposes.'' When asked if he was aware that Powell had been court-martialed, he said he did not know though he visited Powell at the prison in Leavenworth. Paul also was not aware that his brother pleaded guilty to three counts of burglary in Pennsylvania. He did know that Powell was convicted in Oklahoma of burglary and robbery because Powell lived with him at the time.

Again, as with Peter, the effectiveness of Paul's testimony was blunted by lack of knowledge about his brother's adult life and criminal history and by disregard of his brother's guilt in this case. Further, his examples of his brother's concern for human life had negligible weight in contrast to Powell's actual violent, murderous behavior.

The victim here was a four-year-old girl whom Powell repeatedly battered and eventually killed. The helplessness and blamelessness of the victim made this a particularly outrageous crime. Further, Powell had a long history of violent and criminal misconduct, including burglaries, robbery, and assault with intent to

commit rape. This history firmly established four aggravating circumstances. Three were based on Powell's being under sentence of imprisonment for a robbery and two burglaries in Oklahoma when he committed the murder. The fourth was based on his previous conviction of a felony involving the use or threat of violence, the Oklahoma robbery. Despite evidence that as a child Powell suffered neglect and mistreatment at the hands of his mother and father, the jury found no mitigating circumstances.

The district court concluded that Powell was prejudiced because his counsel did not call Powell's brothers to testify and also because counsel did not object to improper comment by the prosecutor on Powell's failure to call witnesses. We conclude that the improper comment had negligible prejudicial impact and that the brothers' testimony, although passionate and sincere, did very little to counter the case in aggravation against Powell. Based on our independent review of this matter, we conclude that there was no reasonable probability that the jury would have reached a different result even absent counsel's deficient performance.

## CONCLUSION

We conclude that Powell was not prejudiced by his counsel's deficient performance. We therefore reverse the district court's order vacating Powell's death sentence and granting a new penalty hearing. We remand this matter, directing the district court to vacate its order and deny respondent's petition.

DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

ROSE, C. J., with whom MAUPIN and GIBBONS, JJ., agree, concurring in part and dissenting in part:

I concur with the majority's analysis and decision in regard to the State's challenge to the timeliness of respondent Kitrich Powell's claim. I must dissent, however, to reversing the district court's determination that Powell's trial counsel were ineffective.

As the district court concluded and the majority accepts, counsel acted deficiently in failing to contact Powell's two brothers and calling them to testify at his penalty hearing. But the majority disagrees with the district court that Powell was prejudiced as a result. I conclude that the district court's decision deserves to be affirmed. The question is whether there is a reasonable probability that jurors would have returned a different sentence if Powell's brothers had testified.

To summarize the relevant evidence, Powell battered and ultimately killed his girlfriend's four-year-old daughter. As the majority observes, given the helplessness and blamelessness of the victim, the jury had good reason to be outraged by the crime itself. Powell also had a history of burglaries as well as convictions for

robbery and assault with intent to commit rape. On the other hand, as a child Powell was neglected and mistreated by his parents, both of whom abused substances. In fact, he and his brothers were essentially abandoned by their mother. He did poorly at school and grew up largely without adult guidance or support in his life. Exacerbating his difficulties and antisocial behavior, Powell became addicted to alcohol and drugs. The trial jury found four aggravating circumstances. But three were based on Powell's being under sentence of imprisonment when he committed the murder, namely three concurrent terms imposed at the same proceeding for a robbery and two burglaries in Oklahoma. And the fourth was based on the same robbery, as a previous conviction of a felony involving the use or threat of violence. The jury found no mitigating circumstances.

If this were the extent of the relevant evidence, I could perhaps agree with the majority in rejecting the district court's determination that Powell was prejudiced by the failure to call his brothers as witnesses. But the majority neglects a crucial factor in this case: the prosecutor's cross-examination of Powell's trial investigator and its consequences. The key exchange was the following:

> Prosecutor: Basically your job was to try to find people to come here and say good things about the defendant?
> Witness: That would be about right.
> Prosecutor: You talked to quite a few people [in Pennsylvania]?
> Witness: Yes.
> Prosecutor: And you talked to a lot of people in Oklahoma?
> Witness: Yes.
> Prosecutor: Did you find anybody that had anything good to say about the defendant?
> Witness: No.
> Prosecutor: I have nothing further.

Then during closing argument, the State returned to this testimony not once but twice, stressing to jurors that the investigator could not find one person to testify for Powell, not even his brother or sister. Moreover, this court on direct appeal, in concluding that Powell's death sentence was not excessive, noted specifically: "Further, at the penalty hearing, only one witness appeared on Powell's behalf. The defense investigator who contacted Powell's family and friends indicated that he was unable to find one person who had 'anything good to say' about Powell."[1] It is thus plain that the defense's failure to call two witnesses willing to testify for Powell was prejudicial.

---

[1] *Powell v. State*, 108 Nev. 700, 715-16, 838 P.2d 921, 931 (1992), *vacated by Powell v. Nevada (Powell II)*, 511 U.S. 79 (1994).

To begin with, as the district court found, counsel should have objected to the State's improper comment on Powell's failure to call witnesses.[2] The State's argument was also unfair and should have been challenged because even at trial it was known that Powell's sister had not declined to testify for him: Powell's mother testified that his sister was dead. But most critical is that both the State and this court considered it important that the defense had failed to find any other witnesses to testify on Powell's behalf even though he faced a death sentence. It was a damaging piece of evidence—no one in the world was willing to come forward and ask that his life be spared. This failure, however, was due to the deficient performance of defense counsel, and in fact both of Powell's brothers were available and willing to testify. I conclude that counsel's failure must be considered prejudicial. Given the significance that the State and this court attached to the lack of defense witnesses, it is likely that jurors too found it significant when they decided that Powell deserved to die.

The district court had the opportunity to hear and observe the testimony of Powell's two brothers and personally assess the impact their testimony would have had on the jury, something members of this court have not had the opportunity to do. The district court appropriately determined that there was a reasonable probability that pleas by Powell's two brothers to spare his life would have led to a different result. I do not think we should disturb this decision reached after first-hand observation of the potential witnesses. For this reason, I dissent.

---

[2]*See Gallego v. State*, 117 Nev. 348, 365-66 & n.34, 23 P.3d 227, 239 & n.34 (2001).